IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARLA JEAN CARSON,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 5:14-cv-51

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On April 23, 2014, Carla Jean Carson ("Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security denying her claims for supplemental security income under Title XVI of the Social Security Act.[1] The Commissioner filed her answer on June 26, 2014.[2] The Plaintiff then filed her motion for summary judgement on July 28, 2014,[3] and the Commissioner filed her motion for summary judgement on August 26, 2014.[4] The Plaintiff filed a reply to the Commissioner's motion on September 9, 2014.[5] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

---

[1] ECF No. 1.

[2] ECF No. 6.

[3] ECF No. 10.

[4] ECF No. 11.

[5] ECF No. 13.

1. The Plaintiff's Motion for Summary Judgment and Memorandum in Support.

2. The Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

I recommend that both motions for summary judgment, ECF Nos. 10, 11, be **DENIED** and the case be remanded solely for the ALJ, at step three of the five-step sequential evaluation process, to compare each of the listed criteria in the ALJ's June 27, 2013, decision to the evidence of the Plaintiff's symptoms.

## II. FACTS

**A. Procedural History**

The Plaintiff applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") on June 29, 2011, alleging a disability beginning on February 4, 2005. R. 211-25. The Plaintiff's claims were initially denied on September 6, 2011, and upon reconsideration on January 17, 2012. R. 141-50, 153-66. On March 1, 2012, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 167-68. An ALJ hearing was held on June 3, 2013, before ALJ Terrence Hugar. R. 72. The Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). R. 74 -98. On June 27, 2013, the ALJ found "that *res judicata* applies as to preclude readjudication of the [Plaintiff's] disability status as of and prior to the May 25, 2011 date upon which the Social Security Administration issued a final and binding decision with regard" to the Plaintiff's previous DIB and SSI applications. R. 55. Therefore, in reaching his decision, the ALJ restricted "the scope of further consideration to a determination of the [Plaintiff's] disability status from May 26, 2011, the day after the [Plaintiff] received notice of the final binding decision on her prior application." *Id.* Based on this finding, the ALJ dismissed the Plaintiff's DIB claim and

only considered the Plaintiff's SSI claim. *Id.* The ALJ ultimately found that the Plaintiff had "not been under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of" the ALJ's decision. R. 63. The Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on February 25, 2014. R. 1-4. The Appeals Council also noted that the Plaintiff may only request review of the ALJ's decision concerning the Plaintiff's SSI claim. R. 2. The Plaintiff then timely brought her claim to this Court.

**B. Medical History**

The following medical history is relevant to the issues raised by the Plaintiff in her motion for summary judgement of whether substantial evidence supports the ALJ's finding that the Plaintiff was not under a disability during the period at issue.

As background, according to medical records, the Plaintiff "sustained an injury to her neck and lower back when she was in an automobile accident in 2005." R. 1577. In 2009, the Plaintiff complained of increasing neck and lower back pain. On November 10, 2009, the Plaintiff was examined by Kris G. Murthy, M.D., for a neurological consultation. R. 1577-79. Dr. Murthy concluded that the Plaintiff suffered from cervical and lumbar radiculopathic pain "most likely secondary to degenerative joint disease." R. 1579. Dr. Murthy also found that the Plaintiff had "[p]aresthesias in the lower back region . . . [a]nxiety . . . [h]istory or stroke . . ." and chronic obstructive pulmonary disease ("COPD").

On July 27, 2011, Darshan Dave, M.D., completed a "Electromyography/Nerve Conduction Study Report." R. 576-78. Dr. Dave first noted the Plaintiff's previous complaints of carpal tunnel syndrome and mild to moderate back pain. R. 577. According to the report, the Plaintiff's "back pain is radiating to bilateral lower extremities with paresthesia in bilateral lower extremities." *Id.*

3

Dr. Dave found that the Plaintiff had normal tone, no atrophy, no abnormal movements, and normal strength in both upper and lower extremities. *Id.* The study concluded "[c]hronic neurogenic denvervation suggetsive [sic] of L5 radiculopathy" but "[n]o evidence of neuropathy." *Id.* The study also found the Plaintiff's "upper extremities [were] suggestive of mild carpal tunnel syndrome." *Id.*

On November 11, 2011, Dr. Dave again examined the Plaintiff. R. 658-59. Again, Dr. Dave found that the Plaintiff had normal tone, no atrophy, no abnormal movements, and normal strength in both upper and lower extremities. R. 659. Dr. Dave observed that the Plaintiff's gait was normal. *Id.* The Plaintiff's memory, attention span, concentration, and language were all normal. R. 658. Ultimately, Dr. Dave assessed that the Plaintiff suffered from "[p]aresthesias ([t]ingling or numbing)," cervical and lumbar disc degeneration, and neck pain. *Id.*

In the latter half of 2011, the Plaintiff was treated by Phoenix Psychological and Counseling Associates. R. 690-94. On November 11, 2011, Charles McClure Green, the Plaintiff's treating psychologist, completed a routine abstract form provided by the West Virginia Social Security Disability Determination Section. R. 687-89. On the form, it was noted by the psychologist that he did not evaluate the Plaintiff's functional limitations in regards to her ability to perform work-related activity. R. 687. The Plaintiff was given Global Assessment of Functioning ("GAF") score of 55. *Id.*[6] The psychologist noted "chronic pain" and "limited movement" as limitations in her daily living. *Id.* The Plaintiff's mood was found to be depressed, anxious, and irritable. R. 688. The Plaintiff's thought content was considered preoccupied, her insight moderately deficient, and judgement and

---

[6] A GAF score between 51-60 suggests moderate mental health symptoms, such as, "flat affect and circumstantial speech, occasional panic attacks" or "moderate difficulty in social, occupational, or school functioning," exhibiting, "few friends, conflicts with peers or co-workers." *Global Assessment of Functioning (GAF) Scale*, MICHIGAN STATE UNIVERSITY, https://www.msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited Jan. 28, 2015).

social functioning mildly deficient. *Id.* The psychologist found that the Plaintiff would be capable of managing benefits, if awarded. *Id.*

On December 6, 2011, a Psychiatric Review Technique was completed by Bob Marinelli, Ed.D. R. 696-709. Dr. Marinelli found that the Plaintiff had "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." R. 701. However, in consideration of the Plaintiff's functional limitations, Dr. Marinelli found that the Plaintiff had only mild restrictions of activities of daily living, difficulty in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. R. 706. Additionally, Dr. Marinelli noted that the Plaintiff had "no problems with personal care," takes care of pets, prepares food, completes chores, travels alone, can walk and drive, shops, handles finances, watches television, listens to music, spends time with others, and is "ok[ay] with instructions." R. 708. However, Dr. Marinelli found that the Plaintiff is "short tempered . . . when in pain," does not "like to be around people," and "not well with stress." *Id.* Ultimately, Dr. Marinelli found that the Plaintiff "retains the ability to understand, remember, and carry out simple and detailed instructions; to respond appropriately to supervisors, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.*

## C. Testimonial Evidence

Testimony was taken at a hearing held on June 3, 2013. R. 72. The following portions of the testimony are relevant to the disposition of this case.

The Plaintiff testified that she has not worked anywhere since 2006. R. 76. She testified that her last job ended because she "was pushed on the concrete and it became a severe problem with [her] back and [her] neck . . ." R. 77. After this incident, she alleges a burning sensation in her back as well as "stabbing" and "shooting" pain. *Id*, R. 85. She takes prescription Hydrocodone for the

5

pain. *Id.* She testified she also takes a muscle relaxer and, combined with Hydrocodone, the medications do minimize her pain. R. 78-79. She testified she also takes Xanax for a nervous condition. R. 79. The Plaintiff testified that she was not receiving any psychological counseling because she "didn't feel [she] needed it." R. 80. She testified that she has carpal tunnel syndrome which causes her to "drop a lot of things." R. 86. The Plaintiff also testified that she suffers from kidney infections and COPD. R. 82. The Plaintiff attributes her shortness of breath, coughing, and wheezing to COPD. *Id.* As medication, the Plaintiff takes two inhalers and Advair. R. 83. The Plaintiff alleges she smokes "[l]ess than a half a pack" of cigarettes a day. R. 82. She also takes Aspirin and "two stomach pills" daily. R. 83. The Plaintiff testified she suffers from endometriosis. R. 84. During the hearing, she testified she gets "tired a lot from everything – from A to Z." R. 85.

The Plaintiff testified that she can only lift five pounds. R. 87. She alleges Dr. Gregory from Stonewall Jackson Hospital advised her to "not push, pull, or drag anything." R. 88. The Plaintiff testified that she cannot sit for long periods because of "pressure" in her back and hips that travels down to her legs. *Id.* She testified that she also has trouble standing and if she stands for too long, bruises will appear and veins will surface. R. 88-89. Because of fatigue, the Plaintiff takes three or four naps during the day. R. 90.

A VE also testified at the hearing. R. 91. First, the VE summarized the Plaintiff's work history and explained the skill and exertional level of each position. R. 92. The first past position was categorized as a construction laborer and "very heavy with an SVP of 2." R. 93. The second past position was categorized as a cashier checker at a grocery store and "light with an SVP of 3." *Id.* The third past position was categorized as a cashier at a smoke shop and "light with an SVP of 2." *Id.* Next, the ALJ posed the following hypothetical to the VE:

6

> Further assume this individual is limited to medium work except the work is with occasional crawling or climbing of ladders, ropes, or scaffolds; also no concentrated exposure to extreme heath, extreme cold, and vibration; and no exposure to hazards such as unprotected heights and moving mechanical parts; also no concentrated exposure to fumes, odors, dusts, gases and poor ventilation; also much be allowed to wear corrective lenses at will. Can the hypothetical individual perform any of the past jobs you described as actually performed or generally performed in the national economy?

R. 93-94. The VE testified that this hypothetical "would compromise the construction worker position" but not the "cashier checker position at the grocery setting . . . [or] smoke shop." R. 94. Next, the ALJ asked the VE if the individual listed in the hypothetical could perform any other work. *Id.* Answering the ALJ's question, the VE listed three positions: (1) box maker (DOT number 794.684-014), (2) custodian positions, third-shift floor buffer (DOT number 381.687-18), and (3) counter supply worker (DOT number319.687-010). R. 94-95. All three positions listed by the VE were at the medium exertional level with a SVP of 2. R. 95.

Next, the ALJ presented a second hypothetical asking the VE "to consider a hypothetical individual with all the same limitations as the first hypothetical, but this time at the light exertional level . . . ." *Id.* The VE provided three more positions: (1) cashier, toll collector, parking garage, inside mall booth (DOT number 211.462-010), (2) weigher scales operator positions (DOT number 222.397-074), and (3) small party assembler (DOT numbre 739.787-030). R. 95-96. All three of these additional positions are categorized as light and unskilled with a SVP of 2. R. 96.

On cross examination by the Plaintiff's counsel, the VE testified that an additional limitation of "occasional handling, fingering, and feeling" bimanually would "compromise the positions stated for the light and medium exertional level." R. 97-98.

7

## III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 26, 2011, the alleged onset date of Plaintiff's disability. R. 57. At step two, the ALJ found that the Plaintiff has the following severe impairments: chronic obstructive pulmonary disease; allergies; reduced visual acuity; and degenerative disc disease of the cervical and lumbar spine. *Id*. At the third step, the ALJ found that none of the Plaintiff's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. R. 58. Before considering step four of the sequential evaluation process, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform:

> medium work . . . except: no more than occasional crawling and climbing ladders, ropes, and scaffolds; avoids concentrated exposure to extreme heat, extreme cold, excessive vibration, irritants (such as fumes, odors, dusts, gases, and poorly ventilated areas), and hazards such as moving machinery and unprotected heights; and accommodates the wearing of corrective lends at will. The claimant retains the ability to understand, remember, and carry out simple and detailed instructions; to respond appropriately to supervisors, coworkers, and usual work situations; and to deal with changes in a routine work setting.

R. 58. At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. R. 62. At the final step, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. R. 66.

## IV. MOTIONS FOR SUMMARY JUDGEMENT

**A. Contentions of the Parties**

Plaintiff contends that the ALJ's unfavorable decision is based on legal error and not supported by substantial evidence. Specifically, she argues that (1) the ALJ's step three analysis was insufficient and (2) the ALJ's step two finding that the Plaintiff's mental impairment was not a severe impairment was reversible error. The Government argues that the ALJ's step three analysis is supported by substantial evidence, and any alleged failure to articulate by the ALJ is harmless. Additionally, the Government contends that the ALJ's finding that the Plaintiff's mental impairments were non-severe was supported by substantial evidence and further development of the record was discretionary.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

1. Step Three of the ALJ's Analysis

Here, the Plaintiff contends that the ALJ's step three finding "was very brief, consisting of his finding and one sentence outlining his 'analysis.'" ECF No. 10-1 at 9. The Plaintiff argues that the ALJ's "single explanatory sentence . . . is not clear [as to] what the ALJ's reasoning was when he found that [the Plaintiff's] impairment neither met nor equaled the Listings, singly or in combination." *Id* at 10. Therefore the Plaintiff concludes that the ALJ's step three finding was insufficient because there is no evidence of record whether the Plaintiff meets or equals one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. The Plaintiff cites the report and recommendation in *Hair v. Astrue*, No. 5:10-CV-309-D, 2011 WL 2681537 (E.D.N.C. June 16,

2011), to argue that because the third step was not sufficiently developed, the ALJ in this case "skipped" the third step of the sequential evaluation process, violating "the basic framework of the five-step sequential analysis." *Id*. at *7.

In this case, the ALJ did not "skip" the third step of the sequential evaluation process. The report and recommendation in *Hair* is distinguishable to the facts of this case. In *Hair*, the ALJ did not find at step two of the sequential evaluation process that the plaintiff's well documented shoulder injury was a severe impairment, even though "'the severity standard is a slight one in this Circuit.'" 2011 WL 2681537, at *5 (quoting *Stemple v. Astrue*, 475 F.Supp.2d 527, 536–37 (D.Md.2007)). Therefore, because the ALJ did not find the plaintiff's shoulder injury was a severe impairment at the second step, he made "no specific reference to the shoulder impairment" at the third step. *Id*. at *6. In short, the ALJ found that the ALJ erred in step three because he earlier erred in step two in failing "to provide an explanation of his handling of the shoulder impairment at step two . . . ." *Id*. at *5.

In this case, at step two, the ALJ found that the Plaintiff "has the following severe impairments: chronic obstructive pulmonary disease; allergies; reduced visual activity; and degenerative disc disease of the cervical and lumbar spine (20 CFR 416.920(c))." R. 57. Step three of the five-step sequential evaluation process states that an ALJ will "consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 416.920(a)(4)(iii). "In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (unpublished). A claimant "bears the burden of

11

production and proof during the first four steps of the inquiry." *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995). Here, at step three of the sequential evaluation process, the ALJ found that the Plaintiff:

> **. . . does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1.**
>
> In so concluding, the undersigned has appropriately evaluated medical and other evidence pertaining to the claimant's medically determinable impairments in conjunction with all the relevant severity criteria contained within the 1.00 Musculoskeletal System, 2.00 Special Senses and Speech, and 3.00 Respiratory System series of listed impairments.

R. 58. Section 1.00 is the subsection applicable to musculoskeletal listings. Here, the Plaintiff claims she qualifies under subsection 1.04 Disorders of the Spine. The relevant part of subsection 1.04 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. pt. 404, subpt. P, App. 1.

Unlike in *Hair* where the ALJ did not find that the plaintiff's shoulder injury was not severe, here, the ALJ did find that the Plaintiff's degenerative disc disease was severe. 2011 WL 2681537, at *5; R. 57. Accordingly, it appears that the ALJ in this matter considered the Plaintiff's disc disease in his step three analysis. At step three, the ALJ analyzed three severity criteria "contained

within the 1.00 Musculoskeletal System, 2.00 Special Senses and Speech, and 3.00 Respiratory System series of listed impairments." R. 58. Other than the ALJ's finding of the Plaintiff's allergies as a severe impairment, the three cited severity criteria addressed in step three seemingly match the other impairments found by the ALJ to be severe in step two.

Although the Court concludes that the ALJ did not "skip" step three of the five-step sequential evaluation process, the Plaintiff also argues that the ALJ's step three finding was improper because the ALJ's written opinion was "insufficient." ECF No. 10-1 at 11. At step three, the ALJ must fully analyze whether a Claimant's impairment meets or equals a "Listing" where there is factual support that a listing could be met. *See Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986). If there is factual support, the ALJ should "identif[y] the relevant listed impairment . . . [and] then compare[] each of the listed criteria to the evidence" of [the Plaintiff's] symptoms." *Cook*, 783 F.2d at 1173.

In this case, there is factual support that the Plaintiff's symptoms *could* meet a Listed Impairment, specifically Section 1.00, the subsection applicable to musculoskeletal listings. From the record, the Plaintiff was diagnosed with cervical and lumbar radiculopathic pain "most likely secondary to degenerative joint disease." R. 1579. According to a "Electromyography/Nerve Conduction Study Report" completed on July 27, 2011, it was noted that the Plaintiff's "back pain is radiating to bilateral lower extremities with paresthesia in bilateral lower extremities." R 577. In the same report the Plaintiff was again diagnosed with lumbar disc degeneration. *Id.* Based on the evidence in the record, the Plaintiff's symptoms may meet an Impairment. However, the ALJ's decision only includes the three listings, including the Section 1.00 musculoskeletal listings, and a statement that the ALJ "appropriately evaluated" the criteria of the applicable listings. R. 58.

13

Although the ALJ's decision did not "skip" step three of the sequential evaluation process, the ALJ's step three analysis was nevertheless insufficient because he failed to compare the relevant listed criteria to the Plaintiff's symptoms. As stated in *Cook*, "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." 783 F.2d at 1173.

2. Step Two of the ALJ's Analysis

Under this argument, the Plaintiff contends that she was "denied a fair and full hearing by the ALJ's unsupported finding that her mental impairments were not severe." ECF No. 10-1 at 14. She alleges that the ALJ's step two finding was "reversible error even though he continued the five-step analysis due to finding that some of [the Plaintiff's] physical impairments were severe." *Id*. Additionally, she argues that "the ALJ should have either requested medical expert testimony or referred [the Plaintiff] for a consultative examination to clarify the severity of her mental impairment and the symptoms that she suffered prior to determining that the mental impairment was not severe." *Id.*

At step two of the sequential evaluation, the Plaintiff "bears the burden of production and proof" that she had a severe impairment. *Pass*, 65 F.3d at 1203. A "severe impairment" is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R.§ 416.920(c). Accordingly, a "not severe" impairment "must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181 (July 2, 1996). A basis for disability will not be found "no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence

of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms" SSR 96-7P, 1996 WL 374186 (July 2, 1996).

In regards to the Plaintiff's alleged mental impairments, the ALJ found that the evidence "shows diagnosis of depression/adjustment disorder, anxiety/posttraumatic stress disorder, and personality disorder, and the claimant is prescribed medication and has had some counseling for mental impairments." R. 58. Yet, the ALJ concluded that "the evidence supports that these impairments are causing no more than mild deficiency in the claimant's daily activities, social functioning, concentration, persistence, and pace and are therefore non-severe." *Id.* The ALJ wrote that this conclusion was "supported by an assessment from a treating psychologist that reported no concentration deficits and only mild deficits in social functioning, and by an opinion from a state agency medical consultant, both, which are given great weight." *Id.*

The Court finds the ALJ's conclusion that the Plaintiff's mental impairments were non-severe is supported by substantial evidence. The ALJ's decision stems primarily from a report completed by the Plaintiff's treating psychologist and a Psychiatric Review Technique completed by Dr. Bob Marinelli. R. 687-89, 696-709. In the treating psychologist's report, he found that the Plaintiff's judgement and social functioning were only mildly deficient and her insight was moderately deficient. R. 688. Otherwise, the Plaintiff's psychologist reported that her speech, perceptions, and concentration were all normal and she had the capability to manage her own benefits, if awarded. *Id.* In Dr. Marinelli's report, he concluded that the Plaintiff had only mild limitations in daily living, social functioning, and concentration. R. 706. Additionally, Dr. Marinelli found that the Plaintiff had "no problems with personal care" and although she did not "like to be around people" or do "well with stress," she nonetheless travels alone, goes out to restaurants, and occasionally spends time

15

with others. R. 708.

Additionally, contrary to the Plaintiff's argument, the ALJ did not err by not requesting a medical expert to testify at the hearing or referring the Plaintiff for a consultative examination. An ALJ has discretion to refer a claimant for additional medical examinations. 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence . . . , we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). At the second step, the Plaintiff, not the Government, "bears the burden of production and proof" that the Plaintiff had a severe impairment. *Pass*, 65 F.3d at 1203. Therefore, the Court finds that substantial evidence supports the ALJ's step two finding.

## V. RECOMMENDATION

I recommend that both motions for summary judgment, ECF Nos. 10, 11, be **DENIED** and the case be remanded solely for the ALJ, at step three of the five-step sequential evaluation process, to compare each of the listed criteria in the ALJ's June 27, 2013, decision to the evidence of the Plaintiff's symptoms.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727

F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).


DATED: January 30, 2015                    /s/ *James E. Seibert*
                                           JAMES E. SEIBERT
                                           UNITED STATES MAGISTRATE JUDGE